**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230621-U

Order filed April 1, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* I.E., | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| a Minor | ) | Du Page County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-23-0621 |
| | ) | Circuit No. 19-JA-53 |
| v. | ) | |
| | ) | |
| McKinley M. B., | ) | |
| | ) | The Honorable |
| Respondent-Appellant). | ) | Demetrios N. Panoushis, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Hettel and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:   The circuit court did not err when it found the respondent to be an unfit parent.

¶ 2       The circuit court entered orders finding the respondent, McKinley B., to be an unfit parent

and terminating his parental rights to the minor, I.E. On appeal, the respondent argues that the

court erred when it found he failed to (1) make reasonable efforts toward correcting the conditions

that led to the minor's removal, (2) make reasonable progress toward the return of the minor to his care, and (3) maintain a reasonable degree of interest, concern, or responsibility for the minor. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In November 2019, the State filed a petition alleging that the minor (born May 1, 2014) was neglected and dependent as defined in sections 2-3 and 2-4 of the Juvenile Court Act of 1987 (705 ILCS 405/2-3, 2-4 (West 2022)). The petition listed the minor's mother but stated that the father was unknown. In part, the petition alleged that the minor was neglected because he was in an environment injurious to his welfare. The petition also alleged that the mother had alcohol and drug dependencies that prevented her from caring for the minor, as well as that she abandoned the minor at a short-term housing service called Safe Families Services "while ceasing communications with the minor." Publication of the upcoming hearing was made in a local newspaper in December 2019 to "McKinley, Unknown Father, and any unknown father, and to all whom it may concern."

¶ 5        In January 2020, the State learned that the respondent was the minor's father and that he was in the custody of the Winnebago County Jail.

¶ 6        The respondent appeared at the adjudicatory hearing in January 2021. The mother defaulted and the respondent neither admitted nor denied the allegation that the minor was in an environment injurious to his welfare. At the close of the hearing, the circuit court found that the minor was neglected. The respondent appeared again in February for the dispositional hearing, after which the court found the respondent to be unfit and ordered, among other things, the caseworker to add services for the respondent.

¶ 7        As of March 31, 2020, the service agency was supposed to conduct an integrated assessment with the respondent. However, due to the COVID-19 pandemic, the agency could not complete the assessment. The respondent was able to meet with the caseworker in March and May 2021, and the integrated assessment was completed.

¶ 8        As of March 4, 2021, the respondent was tasked to (1) participate in parenting coaching, (2) participate in individual counseling, (3) attend a parenting class, (4) demonstrate parenting techniques, (5) obtain a domestic violence evaluation and follow any associated recommendations, (6) keep medications out of the minor's reach, (7) keep the Department of Children and Family Services (DCFS) updated with any changes in phone, address, employment, and household composition, (8) allow DCFS and its assigns to make random visits to his home, and (9) allow random drug testing. The service agency's evaluations of the respondent stated that it could not refer the respondent for services until he was released from jail; therefore, each time he was evaluated at six-month intervals between May 2021 and November 2022, he received unsatisfactory ratings.

¶ 9        In August 2023, the State filed a second amended petition to terminate parental rights. In relevant part, the petition alleged that the respondent failed (1) to make reasonable efforts to correct the conditions that led to the minor's removal, (2) to make reasonable progress toward the return of the minor to his care, and (3) to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare. Regarding the first two allegations, the petition listed eight different nine-month periods between January 2021 and April 2022.

¶ 10        A hearing on the petition was held in October 2023. The current caseworker (assigned to the case in June 2022) testified that the respondent had been incarcerated since 2017. The respondent had only ever seen the minor one time when he was one year old. Further, the prison

3

to which the respondent had been transferred, Sheridan Correctional Facility (Sheridan), did not offer the services to inmates that DCFS tasked him with completing. During the three visits the current caseworker had with him at Sheridan, the respondent asked about having visitation with the minor. However, the caseworker stated,

> "it was my supervisor's decision that because [the minor] didn't know his father, he had only met him once when he was one, and he was now eight and then none, that it wouldn't be in [the minor's] best interest to meet him since [the respondent] would likely be incarcerated beyond the point at which we'd try to find a permanent home for [the minor]."

The caseworker admitted that Sheridan allowed visitation between children and their incarcerated parents.

¶ 11 The respondent testified that he had been at Sheridan for two years, preceded by a four-year stint in the Winnebago County Jail. He did participate in some services offered at Sheridan, including a drug-treatment program. He stated that the program had parenting and anger-management components and that he had completed the program three or four months prior to the hearing. He also stated he was participating in individual and group therapy and that he had completed an additional anger-management class three weeks prior to the hearing.

¶ 12 On cross-examination, the respondent claimed that he had never received a service plan, even though he had been present in court at every permanency-review hearing.

¶ 13 The caseworker was recalled to the stand and stated that other than the three meetings she had with the respondent, he never tried contacting her, including by letter.

¶ 14 At the close of the hearing, the circuit court noted that the respondent was inhibited from working toward his service-plan tasks by his incarceration, but that the responsibility for his incarceration fell squarely on him. The court discussed the petition's allegations and found that

4

the State had proven all three allegations against the respondent by clear and convincing evidence such that he was an unfit parent. Regarding whether the respondent had shown a reasonable degree of interest, concern, or responsibility toward the minor, the court noted that the county jail would not have been as restrictive on the respondent's ability to contact the caseworker, but there was no evidence he ever did. The court emphasized the minor's age and dearth of contact between the respondent and the minor and found that the State met its burden on this allegation.

¶ 15   The best-interest hearing was immediately held and resulted in the termination of the respondent's parental rights.

¶ 16   The respondent appealed.

¶ 17                              II. ANALYSIS

¶ 18   On appeal, the respondent argues that the circuit court erred when it found he failed to (1) make reasonable efforts toward correcting the conditions that led to the minor's removal, (2) make reasonable progress toward the return of the minor to his care, and (3) maintain a reasonable degree of interest, concern, or responsibility for the minor.

¶ 19   Section 1(D) of the Adoption Act (750 ILCS 5/1(D) (West 2022)) provides multiple grounds upon which an individual can be found to be an unfit parent. One such ground is the "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." *Id.* § 1(D)(b). Two additional grounds are the

> "[f]ailure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent during any 9-month period following the adjudication of neglected or abused minor ***, or (ii) to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor."

5

The State has the burden of proving parental unfitness by clear and convincing evidence. *In re D.F.*, 201 Ill. 2d 476, 494-95 (2002). A circuit court's determination of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.*

¶ 20 While the circuit court found that all three of the above-cited grounds had been proven by clear and convincing evidence, we will focus our analysis on the "reasonable degree of interest, concern or responsibility" ground, as parental unfitness can be based on any single ground listed in section 1(D) (*id.* at 495).

¶ 21 When a court is facing an allegation of parental unfitness under section 1(D)(b), the court "considers the parent's efforts to visit and maintain contact with the child as well as other indicia, such as inquiries into the child's welfare." *In re Richard H.*, 376 Ill. App. 3d 162, 166 (2007). The parent's efforts toward completing service-plan tasks are also relevant. *Id.* An unfitness determination under section 1(D)(b) must "examine the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278 (1990).

¶ 22 Our review of the record in this case reveals no error in the circuit court's finding under section 1(D)(b). The respondent has been incarcerated since 2017. He made no progress on his service-plan tasks, and while that progress was stymied by his incarceration, he was solely responsible for the decisions that led to his incarceration. Significantly, he has only ever seen the minor in person once, when the minor was one year old, and has never been a part of the minor's life. The case had been open for four years by the time the termination hearing was held, the minor was nine years old, and the respondent apparently was not eligible to be released from prison any time soon. Under these circumstances, we hold that the circuit court's finding that the respondent

6

failed to maintain a reasonable degree of interest, concern, or responsibility toward the minor was not against the manifest weight of the evidence.

¶ 23        Based on our ruling on section 1(D)(b), it is unnecessary to address the respondent's additional arguments regarding reasonable efforts and reasonable progress. See *D.F.*, 201 Ill. 2d at 495. Further, because the respondent does not challenge the circuit court's best-interest ruling, we affirm that judgment as well.

¶ 24                                    III. CONCLUSION

¶ 25        The judgment of the circuit court of Du Page County is affirmed.

¶ 26        Affirmed.